**In the ESTATE OF Noble Ray PRICE, Deceased**

No. 06–16–00062–CV

Court of Appeals of Texas, Texarkana.

Date Submitted: January 26, 2017

Date Decided: February 15, 2017

Rehearing Denied March 21, 2017

Lisa B. Shoalmire, Thomas M. Michel, Lauren M. Lockett, Fort Worth, for Appellant.

Jim Hartnett Jr., Jay D. Hartnett, Will Hartnett, Dallas, for Appellee.

R. Kevin Spencer, Dallas, for Real party in interest.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

Ray Price, a renowned country music singer and songwriter, died on December 16, 2013. He was survived by his wife, Janie Mae Price, and his biological son, Clifton Ray Price. Janie and Clifton have filed competing motions to probate wills purportedly executed by Price, as well as competing will contests which are currently pending.[1] In this interlocutory appeal, Janie argues that the trial court erred in appointing a receiver to take possession of property subject to the will contests. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(1) (West Supp. 2016) (allowing interlocutory appeals from orders regarding the appointment of a receiver). Because we find no abuse of discretion in the trial court's decision to appoint a receiver, we affirm the trial court's judgment.

## I. Standard of Review

■ "We review a trial court's interlocutory order appointing a receiver for an

---

**1.** Clifton filed an application to probate a 2008 will signed by Price and sought issuance of letters testamentary. The 2008 will included specific bequests to Clifton, left two-thirds of all real and personal property to Clifton's step-mother, Janie, with the remaining one-third going to Clifton, and appointed Clifton as the independent executor of his estate. Janie contested Clifton's application to probate the 2008 will, arguing that it was revoked by three subsequently executed wills, which she sought to probate, including a will dated December 2, 2013. Janie also informed the trial court of two warranty deeds, a general assignment, and an agreement converting Price's community property into Janie's separate property, all signed by Price on December 9, 2013. Clifton moved to set aside these documents, which purportedly left everything to Janie, and contested the wills Janie sought to probate on the basis that Price lacked the necessary testamentary or mental capacity to execute the documents, and only signed them as a result of Janie's undue influence. Because these matters are still pending in the trial court, we express no opinion on the merits of this case and find it unnecessary to further discuss the documents or the factual allegations raised by the parties.

abuse of discretion." *Perry v. Perry*, No. 01–16–00156–CV, 512 S.W.3d 523, 526, 2016 WL 7212578, at *3 (Tex. App.–Houston [1st Dist.] Dec. 13, 2016, no pet. h.); *see Stoker v. Stoker*, No. 12–07–00334–CV, 2008 WL 2043037, at *1 (Tex. App.–Tyler May 14, 2008, no pet.) (mem. op.); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.–Waco 2005, pet. denied). "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *see Stoker*, 2008 WL 2043037, at *1; *Krumnow*, 174 S.W.3d at 828. "In other words, we must determine whether the act was arbitrary or unreasonable." *Stoker*, 2008 WL 2043037, at *1 (citing *Downer*, 701 S.W.2d at 242).

▅▅▅ "The mere fact that a trial court may decide a matter within its discretionary authority in a manner different from that of an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.* "When, as here, the trial court makes no separate findings of fact or conclusions of law, we draw every reasonable inference supported by the record in favor of the trial court's judgment." *Perry*, 512 S.W.3d at 526, 2016 WL 7212578, at *3 (citing *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.–Houston [1st Dist.] 2006, pet. denied)). "The trial court's order must be

affirmed if it can be upheld on any legal theory that finds support in the evidence." *Id.* In essence, "[i]f there is some evidence of a substantive and probative character to support the judgment, the trial court did not abuse its discretion." *Stoker*, 2008 WL 2043037, at *1.

## II. Authority to Appoint a Receiver

"Chapter 64 of the Civil Practice and Remedies Code sets forth the circumstances under which a trial court may appoint a receiver." *Perry*, 512 S.W.3d at 527, 2016 WL 7212578, at *3 (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 64.001 *et seq.*). "Section 64.001(a)(3) provides the court may appoint a receiver in an action between parties jointly interested in any property." *Hawkins v. Twin Montana, Inc.*, 810 S.W.2d 441, 444 (Tex. App.–Fort Worth 1991, no writ); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(3) (West 2008). Prior to the appointment of a receiver under subsection (a)(3), the trial court must find that the party seeking appointment of the receiver has "a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(b) (West 2008).

▅▅▅ Even though "[a] receiver appointed pursuant to section 64.001(a) and (b) of the Texas Civil Practice and Remedies Code is not required to show that no other adequate remedy exists," [2] "[t]he ap-

---

**2.** Although there is authority generally stating that, "[e]ven if a specific statutory provision authorizes a receivership[,] ... a trial court should not appoint a receiver if another remedy exists, either legal or equitable," *see Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.–Houston [1st Dist.] 2008, no pet.), a closer review of such cases reveals that they were decided under sections of the former Business Corporations Act that contained that require-

ment. Current versions of those statutes are now found in the Texas Business Organizations Code. *See* TEX. BUS. ORG. CODE ANN. § 11.403(b) (West 2012) ("A court may appoint a receiver for [specific property] only if: ... (4) *the court determines that other available legal and equitable remedies are inadequate*." (emphasis added)); TEX. BUS. ORG. CODE ANN. § 11.404(b) (West 2010) ("A court may appoint a receiver [to rehabilitate a do-

pointment of a receiver is a harsh, drastic, and extraordinary remedy, which must be used cautiously." *In re Estate of Trevino*, 195 S.W.3d 223, 231 (Tex. App.–San Antonio 2006, no pet.); *Perry*, 512 S.W.3d at 527, 2016 WL 7212578, at *3 (citing *Benefield*, 266 S.W.3d at 31); *see Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. E Court, Inc.*, No. 03–02–00714–CV, 2003 WL 21025030, at *4 (Tex. App.–Austin May 8, 2003, no pet.). "In determining whether the trial court erred in appointing a receiv-

mestic entity] only if: ... (3) *the court determines that all other available legal and equitable remedies*, including the appointment of a receiver for specific property of the domestic entity ... *are inadequate.*" (emphasis added)); TEX. BUS. ORG. CODE ANN. § 11.405(b) (West 2012) ("court may order a liquidation [of the property and business of a domestic entity] and appoint a receiver [to effect the liquidation] only if: ... (3) *the court determines that all other available legal and equitable remedies*, including the appointment of a receiver for specific property of the domestic entity and appointment of a receiver to rehabilitee the domestic entity, *are inadequate.*" (emphasis added)); TEX. BUS. ORG. CODE ANN. § 21.757 (West 2012) ("Except as provided by Section 21.756, in a case in which a shareholder is entitled to wind up and terminate a close corporation under a shareholders' agreement, a court may not order ... receivership ... *unless the court determines that any other remedy in law or equity*, including appointment of a provisional director, custodian, or other type of receiver, *is inadequate.*" (emphasis added)). Thus, when a receiver is sought under the Business Organizations Code, a party must establish that "other available legal and equitable remedies are inadequate." TEX. BUS. ORG. CODE ANN. § 11.403(b)(4).

By contrast, Section 64.001, subsections (a)(3) and (b), of the Civil Practice and Remedies Code contain no such requirement. TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(3), (b). Accordingly, in *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, the Supreme Court held that the previous version of Section 64.001, subsections (a)(3) and (b), of the Texas Civil Practice and Remedies Code (Subdivision 1 of Article 2293 of the Texas Revised Civil Statutes of 1925), which was

er, '[o]ur review focuses on whether the pleadings and evidence are sufficient to justify a receivership.' " *Perry*, 2016 WL 7212578, at *3 (quoting *Benefield*, 266 S.W.3d at 31).

## III. The Trial Court did not Abuse Its Discretion in Appointing a Receiver

By virtue of their competing will contests, Janie and Clifton were parties who were jointly interested in property.[3] In this

enacted in 1887 and brought forward thereafter in the several codes, broadens the right to a receiver as recognized in courts of equity by expressly specifying certain cases enumerated in its Subdivisions 1 to 3 in which receivers may be appointed. ...

.... The subdivision itself gives the standard from which the right of relief may be ascertained in a given case without resort to rules of equity. It provides in substance that in such suit the court may appoint a receiver when two conditions exist: (1) The plaintiff or other party must be shown to have a probable right to or interest in the property or fund; [and] (2) it must be shown that the property or fund is in danger of being lost, removed or materially injured. There is no additional condition or requirement ... that the plaintiff or other applicant for the appointment of a receiver has no other adequate remedy.

*Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 806 (1940). Consequently, "[a] receiver appointed pursuant to section 64.001(a) and (b) of the Texas Civil Practices and Remedies Code is not required to show that no other adequate remedy exists." *Trevino*, 195 S.W.3d at 231; *see also Estate of Benson*, No. 04–15–00087–CV, 2015 WL 5258702, at *7 (Tex. App.–San Antonio Sept. 9, 2015, pet. dism'd) (mem. op.) (noting that *Benefield* was distinguishable because it was decided under the Texas Business Corporations Act, whereas the case on appeal involved a receiver appointed under the Texas Estates Code).

**3.** Under the 2008 will Clayton sought to probate, he and Janie would have had undivided interests in Price's property. While we express no opinion as to the final disposition in this will contest, we note that the potential for

appeal, we must determine whether the trial court abused its discretion in concluding (1) that Clifton had a probable interest in or right to the property and (2) that the property was in danger of being lost, removed, or materially injured.

### A. Factual Background

Almost two years before the receivership, the trial court determined that the interests of Price's estate required the immediate appointment of a temporary administrator. *See* TEX. ESTATES CODE ANN. § 452.001 (West 2014), § 452.051 (West Supp. 2016).[4] On October 16, 2014, the court appointed Kevin Spencer as temporary administrator during the pendency of the case and, among other enumerated powers, gave him the authority "[t]o make demand for and to take charge and possession of all Decedent's assets in the possession of any person"; "to take control of any and all corporations, limited liability companies[,] … and other business entities which [Price] controlled or owned at the time of his death"[;] "[t]o receive any monies, interest, and all other types of income payable to or receivable by the Estate"[;] to pay all properly outstanding debts; and "[t]o have authority to cause applications, motions[,] and/or petitions to be filed in this proceeding seeking authority to sell real estate."

On July 6, 2016, Clifton filed an application to appoint Spencer as receiver over the assets purportedly transferred to Janie in the month of Price's death. The application argued that Janie had possession and control over all of the contested assets and that she could sell them or "allow them to

waste away as she is currently doing." The trial court set the application for hearing.

### B. Evidence at the Hearing

Janie was the sole witness at the receivership hearing and provided testimony about the circumstances under which Price had signed the two warranty deeds, general assignment, and agreement converting Price's community property into Janie's separate property, all signed on December 9, 2013. Janie testified that Price was in East Texas Medical Center on the day that he signed all of these documents. Specifically with regard to the general assignment which allegedly transferred a substantial amount of property to her, Janie confirmed that it was not prepared by an attorney. Instead, Janie's testimony established that the document was prepared by her sister, who is a secretary. According to Janie, her sister typed up the general assignment after allegedly speaking with Price over the telephone, and brought all of the documents to Price at the hospital for his signature, seven days before his death.

As for the assets that formed the subject of the will contests, Janie informed the trial court of her belief that she was the sole owner of all assets that once belonged to Price and could do what she wanted with those assets, including selling them. Although Janie clarified that she had not yet done anything with those assets, she added that she could sell Price's tour buses "right now." Clifton expressed his concern that Janie might dispose of the assets and also complained that real property and

joint ownership of property distinguishes this case from *Kneisley v. Intertex, Inc.*, 797 S.W.2d 343, 345–46 (Tex. App.–Houston [14th Dist.] 1990, no writ), which ruled that Section 64.001(a)(3) did not apply to a contest to determine which of two claimants had superior title and right to possess the *entire* property.

4. The Texas Estates Code became effective on January 1, 2014. Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 1, 2009 Tex. Gen. Laws 1512, 1512. We refer to the current provisions of the Texas Estates Code, which supplanted the Texas Probate Code.

tour buses worth $100,000.00 were declining in value.

Janie also testified that she was running Priceless Records, LLC, a company that Price owned an interest in prior to his purported execution of the general assignment. Although Janie had not owned an interest in the company prior to the execution of the purported general assignment, and the company had eight other shareholders, Janie testified that she believed she was the managing partner of the company. As managing partner, Janie told the court that she had taken a $50,000.00 check that Miramonte had sent to Priceless Records for Price's work and had "made the check out to [her]self." As of the date of the hearing, Priceless Records was facing a lawsuit filed against it, Janie, and Price's estate. Janie also testified that she had collected a $10,000.00 check that Sony Records had sent to her as a royalty for Price's music.

At the conclusion of the hearing, the trial court determined that Clifton had a probable interest in or right to the property. The court further expressed its concern that personal property was being "diluted or wasted" and that real property was continually decreasing in value and would waste away unless properly preserved. Accordingly, the court ordered that Spencer be appointed as the receiver and gave him the following powers:

i) [To t]ake control of all personal property assets listed in the general as-

signment and Agreement Attendant Converting Community Property to Separate Property, on December 9, 2013, purportedly transferring all of his property to [Janie] ... ;

....

iv) To take possession of all books and records of the items contained in the Assignment and Agreement Attendant Converting Community property to Separate Property;

v) To take possession of all books and records of Priceless Records, LLC;

vii) To have authority to ask the Court for power of sale of assets under their control; ...

....

ix) [and] ... to petition the Court for further powers as needed.[5]

## C. Analysis

▮▮▮▮ Janie testified about the circumstances under which Price signed the December 9, 2013, documents that purportedly left all of Price's property to her. Clifton's will contest and petition to set those documents aside were based on the theory that Price lacked the requisite capacity to execute the documents or that he signed the documents as a result of Janie's undue influence.[6] With respect to the general assignment, Janie's testimony established that no attorney was consulted and that Janie's sister drafted the general assignment. Janie's testimony also showed that her sister brought all of the Decem-

---

**5.** Referring to the December 9 inter vivos transfers, Janie argues that the trial court "does not have authority to appoint a receiver to sell Janie's separate property." While the trial court's order provides that Spencer can petition the court for a power of sale, it does not give Spencer the power to sell any property. Rather, the trial court would be required to make a final determination as to the characterization and ownership of the property prior to authorizing any sale of property.

**6.** We consider both the pleadings and the evidence in determining whether the trial court erred in appointing a receiver. *Chapa v. Chapa*, No. 04–12–00519–CV, 2012 WL 6728242, at *6 (Tex. App.–San Antonio Dec. 28, 2012, no pet.) (mem. op.) (citing *Benefield*, 266 S.W.3d at 31; *Genssler v. Harris Cty.*, No. 01–10–00593–CV, —— S.W.3d ——, ——, 2010 WL 3928550, at *4 (Tex. App.–Houston [1st Dist.] Oct. 7, 2010, no pet.)).

ber 9 documents to Price to sign while he was in the hospital and that Price signed these documents seven days before his death. In light of the pleadings and testimony presented at the hearing, we cannot conclude that the trial court acted without reference to any guiding rules and principles in determining that Clifton had a probable interest in or right to the property.[7]

 Additionally, we cannot conclude that the trial court abused its discretion in determining that the property was in danger of being lost, removed, or materially injured. Before Spencer was appointed as the receiver, he was appointed as the temporary administrator under Section 452.051 pending the determination of the will contests and Clifton's petition to set aside the December 9 documents.[8] Although Spencer was given broad authority as the temporary administrator to preserve "all Decedent's assets in the possession of any person," Janie testified that she had already determined that all of Price's property belonged to her, not the estate, as a result of the December 9 inter vivos transfers. As a result, she informed the trial court that she had accepted a $10,000.00 payment from Sony, had written a $50,000.00 check to herself from Priceless Records, LLC, and had the ability and right to sell any and all of Price's property should she wish to do so.

The trial court heard evidence that Janie had disposed of, and believed she could dispose of, assets subject to the will contests and Clifton's petition to set aside the December 9 documents. In light of the pleadings and evidence presented in this case, we will not disturb the trial court's finding that property Clifton had a probable right or interest in was in danger of being lost, removed, or materially injured.

Because we find there was no abuse of discretion in the trial court's appointment of a receiver to preserve the status quo of the contested assets pending its final resolution of the merits of the case, we overrule Janie's point of error.

## IV. Conclusion

We affirm the trial court's judgment.

---

**7.** "A receiver is not appointed for the benefit of the applicant, but to receive and preserve the property for the benefit of all parties interested therein." *Whitson Co. v. Bluff Creek Oil Co.*, 256 S.W.2d 1012, 1014 (Tex. Civ. App.–Fort Worth 1953, writ dism'd). Janie argues that Clifton has no probable right or interest in the property because his rights and interests have yet to be adjudicated. In this will contest, both parties' rights are yet to be adjudicated. Employing the logic that no party has a right or interest to property until ownership rights are finally declared would lead to the conclusion that there can be no receivership in a case involving a will contest. We decline to engage in such reasoning. *See id.* at 1016 (Section 64.001 "does ... not require an absolute right or interest to be shown before a receiver can be appointed.").

**8.** "[T]he purpose behind the appointment of a temporary administrator is to preserve the status quo of the estate" until a final determination on a will contest is made. *Hawkins v. Estate of Volkmann*, 898 S.W.2d 334, 344 (Tex. App.–San Antonio 1994, writ denied) (citing *Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex. 1990)).